OPINIONS OF THE SUPREME COURT OF OHIO
The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Deborah J. Barrett, Administrative Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE: Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

Fabrey et al., Appellants, v. McDonald Village Police Department et al., Appellees.
[Cite as Fabrey v. McDonald Police Dept. (1994),     Ohio St.3d     .]
Political subdivisions -- Tort liability -- R.C. 2744.02(B)(4) is constitutional.

1. R.C. 2744.02(B)(4) does not violate the guarantees of equal protection of the Ohio or United States Constitutions.

2. R.C. 2744.02(B)(4) does not violate the due process provisions of the Ohio or United States Constitutions.

3. R.C. 2744.02(B)(4) does not violate Section 16, Article I of the Ohio Constitution.

(No. 93-731 -- Submitted April 6, 1994 -- Decided September 28, 1994.)

Appeal from the Court of Appeals for Trumbull County, No. 92-T-4691.

On April 23, 1990, plaintiff-appellant, Robert J. Fabrey, a police officer with the Brookfield Police Department, arrested Aubrey M. Riddle as a result of an altercation at a bar. Upon learning that the Brookfield jail was too crowded to accommodate Riddle, Fabrey contacted the McDonald Village Police Department and learned that the McDonald jail would take Riddle. Upon arriving at the McDonald jail, two McDonald police officers helped Fabrey place Riddle in a holding cell. While Fabrey was still in the office area of the jail, the officers noticed smoke coming from under the cell block door; however, no fire alarm sounded. Fabrey entered the cell block to rescue Riddle, and suffered injuries.

Investigators concluded that Riddle had apparently started the fire by igniting a mattress with a cigarette lighter. The source of the lighter was unknown, but Fabrey alleged that he searched Riddle prior to placing him in the police cruiser.

Fabrey and his wife, appellants, filed suit against the village of McDonald, the McDonald Village Police Department and Police Chief Jerry Tyree, appellees, to recover for his personal injuries and her loss of consortium. The trial court granted defendants' motion for summary judgment on the basis

that they were immune from liability pursuant to R.C. 2744.02(B)(4) and 2744.03(A)(6).  The court of appeals affirmed.

The cause is now before this court pursuant to the allowance of a motion to certify the record.

Richard D. Goldberg, for appellants.

Buckingham, Doolittle & Burroughs and Frank G. Mazgaj; and William M. Roux, for appellees.

Moyer, C.J.  Appellants challenge the constitutionality of R.C. 2744.02(B)(4)1 under the due process and equal protection provisions of the Ohio and United States Constitutions, and the right to remedy provision of the Ohio Constitution.  We conclude that the statute is constitutional and affirm the court of appeals.

Statutes are presumed to be constitutional unless shown beyond a reasonable doubt to violate a constitutional provision.  State ex rel. Dickman v Defenbacher (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, paragraph one of the syllabus.

Appellants argue that R.C. 2744.02(B)(4) violates the Ohio and federal constitutional guarantees of equal protection under the law.  The standard for determining violations of equal protection is essentially the same under state and federal law.  Beatty v. Akron City Hosp. (1981), 67 Ohio St.2d 483, 491, 21 O.O.3d 302, 307, 424 N.E.2d 586, 591-592, quoting Kinney v. Kaiser Aluminum & Chem. Corp. (1975), 41 Ohio St.2d 120, 70 O.O.2d 206, 322 N.E.2d 880.  Where neither a fundamental right nor a suspect class is involved, a legislative classification passes muster if the state can show a rational basis for the unequal treatment of different groups.  Id., 67 Ohio St.2d at 492, 21 O.O.3d at 307, 424 N.E.2d at 592.  The Supreme Court of the Unites States has articulated the test thus:  "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived of to justify it."  McGowan v Maryland (1961), 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393, 399.  The court has alternately stated that in the absence of a suspect class or fundamental right, legislative distinctions are invalid only if they bear no relation to the state's goals and no ground can be conceived to justify them.  Clements v. Fashing (1982), 457 U.S. 957, 963, 102 S.Ct. 2836, 2843, 73 L.Ed.2d 508, 515.

R.C. 2744.02(B)(4) involves neither a fundamental right nor a suspect class.  No authority of which we are aware has held the right to sue a political subdivision for the negligence of its employees to be a fundamental right.  To the contrary, the traditional rule has been the doctrine of sovereign immunity, which historically has negated the right to sue the state without its permission.

Nor does the statute burden a suspect class.  The distinction it makes is between negligent acts that occur in public buildings such as courthouses and office buildings, and negligent acts that take place in detention facilities.  The basis of the distinction is the location of the victim, not his or her identity.  The statute applies evenly across every personal classification that has evinced heightened scrutiny,

such as race, national origin, religion, and sex.  Prisoners, employees, and other visitors to detention facilities are all treated alike under the statute.

A primary purpose of R.C. Chapter 2744 is to preserve the fiscal resources of political subdivisions.  Menefee v. Queen City Metro (1990), 49 Ohio St.3d 27, 29, 550 N.E.2d 181, 182. The Supreme Court of the United States has declared that the preservation of fiscal integrity is a valid state interest. Shapiro v. Thompson (1969), 394 U.S. 618, 633, 89 S.Ct. 1322, 1330, 22 L.Ed.2d 600, 614.  We must then consider whether the there is a rational relationship between conserving fiscal integrity and the classification created by the statute.

By their very nature, detention facilities are more dangerous than other types of government buildings.  They house people who have committed antisocial and illegal acts.  As this case illustrates, those acts do not always cease when the person is in detention.  Detainees often create dangers to themselves and to others.  The General Assembly has clearly established the policy of the law to be that political subdivisions cannot afford the costs of defending tort suits when incidents occur at these facilities.  Our equal protection review does not require us to conclude that the state has chosen the best means of serving a legitimate interest, only that it has chosen a rational one.  We hold that there is a rational basis for the unequal treatment here, and that R.C. 2744.02(B)(4) does not violate the guarantees of equal protection of the Ohio or United States Constitutions.

Appellants argue also that R.C. 2744.02(B)(4) violates the Due Process Clauses of the Ohio and United States Constitutions.  Under the Ohio Constitution, an enactment comports with due process "if it bears a real and substantial relation to the public health, safety, morals or general welfare of the public and if it is not unreasonable or arbitrary."  Benjamin v. Columbus (1957), 167 Ohio St. 103, 110, 4 O.O.2d 113, 117, 146 N.E.2d 854, 860, citing Piqua v Zimmerlin (1880), 35 Ohio St. 507, 511.  Federal due process is satisfied if there is a rational relationship between a statute and its purpose.  Martinez v. California (1980), 444 U.S. 277, 283, 100 S.Ct. 553, 558, 62 L.Ed.2d 481, 488.  Applying this standard, the Supreme Court held constitutional a state statute that provided immunity to the state and its parole officers from liability stemming from determinations of whether to grant parole.  Id.  In Martinez, a parolee murdered an innocent third party after the parole board, having failed to observe certain procedures, released him.  The Supreme Court reasoned that the grant of immunity to the state and the parole officers satisfies due process because it "rationally furthers a policy that reasonable lawmakers may favor."  Id.  The court's analysis in Martinez, and our analysis under the equal protection law, supra, compel us to hold that R.C. 2744.02(B)(4) does not violate the due process provisions of the Ohio or United States Constitutions.

Appellants argue finally that R.C. 2744.02(B)(4) violates Section 16, Article I of the Constitution of Ohio.  Section 16, Article I states: "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall

have justice administered without denial or delay.

"Suits may be brought against the state, in such courts and in such manner, as may be provided by law."

Appellants argue that Section 16, Article I endows them with a fundamental right to sue a political subdivision for damages for the negligence of its employees. We do not agree. This court has held that the clause permitting suits to be brought against the state is not self-executing, and that the state of Ohio is not subject to suits in tort without the consent of the General Assembly. Krause v. State (1972), 31 Ohio St.2d 132, 60 O.O.2d 100, 285 N.E.2d 736, paragraphs one and three of the syllabus, overruled in part, Schenkolewski v. Cleveland Metroparks Sys. (1981), 67 Ohio St.2d 31, 21 O.O. 3d 19, 426 N.E.2d 784 (holding that abrogation of sovereign immunity could be achieved judicially as well as statutorily). Even when this court abrogated the doctrine of sovereign immunity of political subdivisions for acts of negligence, our holding applied only in the absence of a statute providing immunity. Haverlack v. Portage Homes, Inc. (1982), 2 Ohio St.3d 26, 2 OBR 572, 442 N.E.2d 749, paragraph two of the syllabus. In Haverlack, we recognized that the doctrine of sovereign immunity was a creature of common law, and thus an appropriate subject also for legislative action. The General Assembly in enacting R.C. Chapter 2744 has used that power to create a scheme for immunity and liability of political subdivisions. Because the General Assembly has the power to define the contours of the state's liability, within the constraints of equal protection and due process, the right to sue the state is not fundamental.

The ambient common-law rights that existed at the time a constitutional provision came into being provide guidance in interpreting the scope of the constitutional right. Thus, in Sorrell v. Thevenir (1994), 69 Ohio St.3d 415, 633 N.E.2d 504, we held that Section 5, Article I of the Ohio Constitution does not provide for a jury trial in all cases, but only in those for which the right existed at common law. As we have already noted, and the Krause, Schenkolewski, and Haverlack cases recognized, at the time of the passage of the second paragraph of Section 16, Article I, the ability of citizens to sue the state was a proper subject for action by the General Assembly.

Cases in which we have invalidated statutes and rules on the basis of Section 16, Article I have involved the serious infringement of a clearly preexisting right to bring suit. See, e.g., Burgess v. Eli Lilly & Co. (1993), 66 Ohio St.3d 59, 609 N.E.2d 140 (invalidating provision that triggers limitations period when victim knows there "may" be causation between defendant's product and plaintiff's injuries); Hardy v VerMeulen (1987), 32 Ohio St.3d 45, 512 N.E.2d 626 (holding invalid four-year statute of limitations for malpractice claims where victim did not know or should have known of injury); State ex rel. Christian v. Barry (1931), 123 Ohio St. 458, 175 N.E. 855, paragraph one of the syllabus (invalidating police department rule requiring officer to receive permission from superior officer before filing suit for personal injuries). The immunity of the defendants in this case is not such an infringement of a preexisting right. It is, rather, in accord with a traditional common-law principle. We hold, therefore,

that R.C. 2744.02(B)(4) does not violate Section 16, Article I of the Constitution of Ohio.

In their second proposition of law, appellants urge that R.C. 2744.02(B)(4) does not protect a political subdivision when the alleged action or inaction constitutes willful or wanton conduct. Appellants cite to R.C. 2744.03(A)(6)(b), which removes immunity from employees of political subdivisions for acts that are committed "with malicious purpose, in bad faith, or in a wanton or reckless manner[.]" While we agree that individual employees may be held liable for their malicious, bad faith, wanton or reckless acts, R.C. 2744.03(A)(6) by its very terms applies only to individual employees and not to political subdivisions. It therefore has no effect on the liability of defendants McDonald Village Police Department and McDonald Village.

Defendant Chief Tyree, however, could be liable if his acts or failures to act satisfy the standard of R.C. 2744.03(A)(6)(b). We agree with appellants that the issue of wanton misconduct is normally a jury question. Matkovich v. Penn Cent. Transp. Co. (1982), 69 Ohio St.2d 210, 23 O.O.3d 224, 431 N.E.2d 652. The standard for showing wanton misconduct is, however, high. In Hawkins v. Ivy (1977), 50 Ohio St.2d 114, 4 O.O.3d 243, 363 N.E.2d 367, syllabus, we held that wanton misconduct was the failure to exercise any care whatsoever. In Roszman v. Sammett (1971), 26 Ohio St.2d 94, 96-97, 55 O.O.2d 165, 166, 269 N.E.2d 420, 422, we stated, "mere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor." Such perversity must be under such conditions that the actor must be conscious that his conduct will in all probability result in injury. Id. at 97, 55 O.O.2d at 166, 269 N.E.2d at 423. In Thompson v. McNeil (1990), 53 Ohio St.3d 102, 559 N.E.2d 705, we employed the recklessness standard as enunciated in 2 Restatement of the Law 2d, Torts (1965), at 587, Section 500: "The actor's conduct is in reckless disregard of the safety of others if *** such risk is substantially greater than that which is necessary to make his conduct negligent."

We approve and adopt the following analysis of the court of appeals when it considered the claim against defendant Chief Tyree:

"[A]ppellant argues that Chief Tyree acted in a willful and wanton manner by knowingly failing to comply with the minimum jail standards promulgated by the state Department of Rehabilitation and Correction.

"*** There is no prohibition, in the standards, against permitting prisoners who do not present a threat to themselves or others to have smoking materials. Furthermore, appellee Tyree set forth the departmental policy on smoking in his deposition. Appellant has submitted no evidence as to how Riddle obtained the lighter. Appellants do not allege that Chief Tyree gave the ignition device to Riddle (arguably such behavior could be considered willful and wanton conduct, given Riddle's unstable condition at the time of incarceration). In the absence of this type of behavior, rather than mere allegations that Chief Tyree committed acts that could be considered negligent per se, the trial court correctly

determined that summary judgment was appropriate on this issue."  (Emphasis added.)

Although appellants argue that Tyree's failure to maintain certain safety devices in violation of the standards caused Fabrey's injuries, a review of the record reveals that Tyree's conduct, while arguably negligent, does not rise to the level of wanton misconduct.  Tyree apparently did not anticipate that a prisoner, while locked in a cell, would intentionally set fire to his own mattress.  The General Assembly has declared that Tyree's mere negligence in his official duties should not give rise to personal liability.  This was properly within its authority.

For the above-stated reasons, we affirm the judgment of the court of appeals.

Judgment affirmed.

A.W. Sweeney, Douglas, Wright, Resnick and F.E. Sweeney, JJ., concur.

Pfeifer, J., dissents.

FOOTNOTE:

1 R.C. 2744.02(B)(4) provides:

"Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:

"***

"(4) Political subdivisions are liable for injury, death, or loss to persons or property that is caused by the negligence of their employees and that occurs within or on the grounds of buildings that are used in connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses, but not including jails, places of juvenile detention, workhouses, or any other detention facility, as defined in section 2921.01 of the Revised Code."

Pfeifer, J., dissenting.  For the reasons stated in my concurrence in Garrett v. Sandusky (1993), 68 Ohio St.3d 139, 142, 624 N.E.2d 704, 707, it is contrary to Section 16, Article I of the Ohio Constitution to hold that a governmental entity is immune from suit simply by virtue of its status as sovereign.