OPINION
This is an accelerated calendar appeal submitted to the court on the briefs of the parties. Appellant, Darrell Cobb, appeals from a final judgment of the Portage County Court of Common Pleas granting appellees, the Mantua Township Board of Trustees ("the Board"), Victor Grimm ("Grimm"), John Vechery ("Vechery"), Glenn Turner ("Turner"), and Roger Lewis ("Lewis"), summary judgment. For the reasons that follow, we affirm the judgment of the trial court.
The record shows that on January 28, 1999, appellant filed a complaint against appellees in the Portage County Court of Common Pleas. In his complaint, appellant alleged that his wife had been buried on April 28, 1999, in Westlawn Cemetery, which is located in Mantua Township, and that sometime after the burial, he made arrangements with Solon Granite Memorial Works, Inc., for a headstone to be placed on his wife's grave.
On October 19, 1998, appellant visited the gravesite and noticed that a hole, which had been dug for the headstone footer, was covered by a piece of plywood. When he looked under the plywood, appellant discovered that his wife's burial vault had been placed in the ground at an angle, and that the vault of another person improperly encroached into the gravesite.
Appellant later learned that when the cemetery workers, Turner and Lewis, had dug the hole for the headstone footer, their backhoe struck his wife's vault, causing damage to the vault and possibly to the casket inside. Moreover, appellant claimed that he was never notified of the damage, and that Grimm, a Mantua Township trustee, had authorized repairs to be made to the vault without consulting him first.
Based on these allegations, appellant asserted the following causes of action: (1) intentional infliction of emotional harm; (2) negligent infliction of emotional harm; (3) negligence; and (4) breach of contract. Furthermore, appellant also sought declaratory relief with respect to the constitutionality of R.C. Chapter 2744.
Appellees filed a combined answer on March 29, 1999, in which they essentially denied the allegations in appellant's complaint. However, they did admit that another burial vault was encroaching into appellant's wife's gravesite, and that her vault had been damaged during the excavation for the headstone footer, but that the damage had been promptly repaired. In addition, appellees also asserted several affirmative defenses, including, inter alia, absolute/qualified immunity under R.C. Chapter 2744.
On January 10, 2000, appellees filed a motion for summary judgment in which they argued that there was no genuine issue of material fact, and that they were entitled to judgment as a matter of law. Specifically, appellees argued that the operation of a township cemetery was a governmental function, and as a result, they were immune from liability for any acts or omissions occurring in connection with the operation of the cemetery.
In support of their motion, appellees attached an affidavit from Grimm. He averred that on October 19, 1998, Turner and Lewis struck the corner of appellant's wife's vault while excavating for the headstone footer. According to the affidavit, the two men immediately contacted Grimm, who then went to the cemetery to examine the vault. Once at the cemetery, Grimm noticed that the vault had sustained some minor damage. To protect the vault and its contents, Grimm then instructed Turner and Lewis to repair the damaged area with hydraulic cement and waterproof tar.
Grimm claimed to have talked with appellant about the incident on October 19, 1998. He also stated that in a conversation he and appellant had the next day, appellant asked that the hole be back filled with dirt.
On March 31, 2000, appellant filed a brief in opposition to summary judgment. He argued that appellees were not entitled to immunity because covering up damage to a grave and never intending to inform the relatives of the deceased about the damage constituted reckless and wanton behavior. Moreover, he maintained that even if appellees were entitled to immunity, it would not apply to his breach of contract claim. Finally, appellant contended that R.C. Chapter 2744 was unconstitutional because it treated municipal cemeteries differently from township cemeteries.
Appellant submitted his own affidavit with his brief in opposition to summary judgment. In this affidavit, appellant stated that although he knew his wife's vault was placed in the ground at an angle and that another vault encroached on the gravesite, he was not told at the time of the incident that his wife's vault had been damaged. In fact, appellant claimed that he did not learn of the damage until another township trustee, Connie Leedom, informed him a month later on November 20, 1998. Appellant further claimed that Lewis admitted to him that he otherwise never would have known about the damage because the hole had been filled with concrete.
On April 10, 2000, the trial court issued a decision in which it granted appellees summary judgment on appellant's tort claims. In reaching its decision, the trial court concluded that appellees were entitled to immunity because they were acting within the scope of their employment or official duties, and there was no obligation to inform appellant of the damage to his wife's vault. According to the trial court, failing to inform appellant of the damage did not tend to show malice, bad faith, or wanton or reckless conduct. However, the court denied appellees' motion on appellant's breach of contract claim and his request for declaratory relief.
Appellees subsequently filed a motion in limine to exclude expert testimony on the grounds that although appellant intended to present an expert at trial, he never provided appellees with information concerning any expert witnesses. Appellees argued that they would be severely and unfairly prejudiced because they had not been given the opportunity to conduct any discovery with respect to appellant's expert, and because they were now precluded from retaining their own expert to rebut appellant's.
In addition, appellees also filed a motion in limine to exclude testimony concerning any emotional distress arising from the alleged breach of contract. As support, they maintained that Ohio does not recognize emotional damages stemming from a breach of contract.
The trial court granted appellees' motion to exclude emotional distress evidence on November 14, 2000. On the same day, appellant voluntarily dismissed his remaining claims before trial could begin, and subsequently filed a notice of appeal with this court.
In his first assignment of error, appellant argues that the trial court erred in granting appellees summary judgment on his tort claims because a genuine issue of material fact still exists as to whether appellees were entitled to immunity. Appellant contends that when the evidence is construed most strongly in his favor, it shows "a willful, wonton [sic], malicious, and intentional plan by [appellees] to cover up the damage that they had done [to his wife's] vault, and maybe casket, in derogation of [his] basic right to a peaceful and decent internment of a loved one."
At the outset, we note that summary judgment is proper when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come but to one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); Leibreich v. A.J. Refrigeration, Inc. (1993),67 Ohio St.3d 266, 268.
Material facts are those facts that might affect the outcome of the suit under the governing law of the case. Turner v. Turner (1993),67 Ohio St.3d 337, 340, citing Anderson v. Liberty Lobby, Inc. (1986),477 U.S. 242, 248. To determine what constitutes a genuine issue, the court must decide whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. Turner at 340.
The party seeking summary judgment on the ground that the nonmoving party cannot prove its case bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims. Dresherv. Burt (1996), 75 Ohio St.3d 280, 293. The moving party must be able to point specifically to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claim. Dresher at 293.
If the moving party fails to satisfy this initial burden, summary judgment should be denied. Id. However, if this initial burden is met, the nonmoving party has a reciprocal burden to respond, by affidavit or as otherwise provided in the rule, in an effort to demonstrate that there is a genuine issue of fact suitable for trial. Id. If the nonmoving party fails to do so, the trial court may enter summary judgment against that party if appropriate. Id.
Generally speaking, R.C. 2744.02(A)(1) provides that a political subdivision is not liable for injury, death, or loss to persons or property incurred in connection with the performance of a governmental function of the political subdivision. Franks v. Lopez (1994),69 Ohio St.3d 345, 347. It states:
 "For purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."
 Although R.C. 2744.02(A)(1) provides that a political subdivision is generally not liable for damages incurred in the performance of governmental functions, the immunity afforded a political subdivision is not absolute. Wamsley v. West Jefferson (2000), 139 Ohio App.3d 170, 173. Specifically, R.C. 2744.02(B) enumerates five exceptions to the general grant of sovereign immunity. They are: (1) injury caused by the negligent operation of any motor vehicle by an employee upon the public roads when the employee is engaged within the scope of his employment and authority; (2) injury caused by negligent acts performed by employees with respect to proprietary functions; (3) injury caused by the negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads; (4) injury caused by negligent acts performed by employees occurring within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function; and (5) when liability is expressly imposed upon the political subdivision by a section of the Revised Code. R.C. 2744.02(B)(1)-(5).
Turning to the case at bar, no one questions that the Board is a political subdivision. R.C. 2744.01(F). Moreover, it is also clear that "[t]he design, construction, reconstruction, renovation, operation, care, repair, and maintenance of a township cemetery * * *" is a governmental function. R.C. 2744.01(C)(2)(s). See, also, 1999 Ohio Atty.Gen.Ops. No. 99-047.
The question before us, then, is whether the Board is entitled to immunity under the facts of this case. After looking at the record, we conclude that appellant has not claimed that any of the exceptions to immunity contained in R.C. 2744.02(B) apply. While he argues that the actions of the individual appellees were malicious, wanton or reckless, and done in bad faith, this exception to individual employee immunity, by its very terms, does not apply to political subdivisions. Fabrey v.McDonald Village Police Dept. (1994), 70 Ohio St.3d 351, 356. Therefore, pursuant to R.C. 2744.02(A)(1), the Board is entitled to immunity because none of the exceptions contained in R.C. 2744.02(B)(1)-(5) apply.
As for the individual appellees, they too are generally entitled to immunity. Under R.C. 2744.03(A)(6), employees and officials of a political subdivision acting within the scope of their employment are immune from tort liability unless one of the following exceptions apply:
 "(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
 "(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
 "(c) Liability is expressly imposed upon the employee by a section of the Revised Code. * * *"
 Here, appellant argues that Grimm, Vechery, Turner, and Lewis are not entitled to immunity because their actions were outside the scope of their employment and/or official duties, and because their actions "were with malicious purpose, in bad faith, or in a wanton or reckless manner[.]" We disagree.
First, appellant's claims do not arise from the placing of his wife's vault at an angle, the fact that another vault is encroaching on the gravesite, or from the damage that occurred while Turner and Lewis were excavating for the headstone footer. Instead, appellant's causes of action are premised on his allegations that appellees actively participated in a plan to keep the information from him that his wife's vault had been damaged.
Given his accusations, appellant contends that appellees were acting outside the scope of their employment or official duties because "participating in a cover-up is manifestly outside the duties of government employees." However, appellant has failed to provide evidence of any plan. Moreover, even if it were true that appellees never intended to notify him of the damage, appellant's unsupported statement concerning participation in a "cover-up" is obviously outside the scope of employment, is merely an inference and does not constitute sufficient evidence or authority to rebut summary judgment on the issue of immunity.
As for his second argument, i.e., that appellees' actions were malicious, in bad faith, or in a wanton or reckless manner, we agree that these issues are normally questions for a jury to decide. Fabrey at 356. Nevertheless, the standard for showing such conduct is high, and summary judgment will be appropriate in some cases. Id.
In Cook v. Hubbard Exempted Village Bd. of Edn. (1996),116 Ohio App.3d 564, this court set forth the definitions for "malicious purpose," "bad faith," and "reckless conduct." In doing so, we held:
 "`As to whether conduct would reflect a malicious purpose, the Supreme Court has held that "`[m]alicious' means `indulging or exercising malice; harboring ill will or enmity.'" Furthermore, "malice" can be defined as the willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified.
"`* * *
 "`"[B]ad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another." * * *
 "`Finally, an individual acts in a "reckless" manner "`" if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.'" (Citations omitted.)'" Cook at 569, quoting Jackson v. Butler Cty. Bd. of Cty. Commrs. (1991), 76 Ohio App.3d 448, 453-454.
 In addition, "wanton conduct" has been defined as "the failure to exercise any care whatsoever." Fabrey at 356. However, "`mere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor.'" Id., quoting Roszman v. Sammett
(1971), 26 Ohio St.2d 94, 96-97. See, also, McGuire v. Lovell (1999), 85 Ohio St.3d 1216, 1219 (Moyer, C.J., dissenting). "Such perversity must be under such conditions that the actor must be conscious that his conduct will in all probability result in injury." Fabrey at 356.
As a result, "[s]ummary judgment in favor of a political subdivision's employee is proper where the employee's actions `showed that he did not intend to cause any harm * * *, did not breach a known duty through an ulterior motive or ill will, [and] did not have a dishonest purpose * * *.'" Fox v. Daly (Sept. 26, 1997), Trumbull App. No. 96-T-5453, unreported, 1997 Ohio App. LEXIS 4412, at 9-10, quoting Hackathorn v.Preisse (1995), 104 Ohio App.3d 768, 772.
When looking at the evidence introduced during the summary judgment exercise, we conclude that appellant has failed to set forth facts showing that appellees' actions "were with malicious purpose, in bad faith, or in a wanton or reckless manner[,]" so as to lose their immunity under R.C. 2744.03(A)(6). Appellant never made an allegation that appellees acted with the intent, purpose, or design to injure. Nor did he provide any evidence to support a finding that appellees failed to exercise any care whatsoever. Finally, the facts, when considered in a light most favorable to appellant, do not establish, or even allege, that appellees breached a known duty through some ulterior motive or ill will.
Simply stated, even if appellees never intended to inform appellant about the damage, an issue we do not decide, this conduct does not support a finding that appellees are not entitled to immunity under R.C.2744.03(A)(6). While their actions may rise to the level of negligence, or at minimum poor judgment, this is simply insufficient, as a matter of law, to rebut the presumption of immunity. As a result, the trial court's judgment granting Grimm, Vechery, Turner, and Lewis summary judgment was proper. Appellant's first assignment of error is not well-taken.
In his second assignment of error, appellant argues that the trial court erred in granting appellees' motion in limine with respect to emotional damages. He submits that contracts involving funeral services are inherently different from a general contract action, and that emotional damages reasonably follow from a breach of such a contract.
It is well-settled in Ohio that the granting of a motion in limine is not a final appealable order because such an order does not determine the ultimate admissibility of the evidence. As a result, "`it is incumbent upon a [party] who has been temporarily restricted from introducing evidence by virtue of a motion in limine, to seek the introduction of the evidence by proffer or otherwise in order to enable the court to make a final determination as to its admissibility and to preserve any objection on the record for purposes of appeal.'" Garrett v. Sandusky (1994),68 Ohio St.3d 139, 141, quoting State v. Grubb (1986), 28 Ohio St.3d 199, paragraph two of the syllabus.
Here, not only did appellant fail to proffer the disputed evidence, he voluntarily dismissed his case. Accordingly, there was no final determination as to the admissibility of the evidence for this court to review. Appellant's second assignment of error is, therefore, without merit.
Based on the foregoing analysis, appellant's two assignments of error are not well-taken. The judgment of the trial court is affirmed.
PRESIDING JUDGE JUDITH A. CHRISTLEY, NADER, J., GRENDELL. J., concur.