[Cite as *Fondale v. Guernsey Cty. Children's Servs.*, 2012-Ohio-3621.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| | | JUDGES: |
| CHARLES AND MARGARET | : | Hon. W. Scott Gwin, P.J. |
| FONDALE | : | Hon. John W. Wise, J. |
| | : | Hon. Julie A. Edwards, J. |
| Plaintiffs-Appellants | : | |
| | : | |
| -vs- | : | Case No. 2012-CA-7 |
| | : | |
| GUERNSEY COUNTY CHILDREN'S | : | |
| SERVICES, ET AL | : | O P I N I O N |
| | | |
| Defendants-Appellees | | |

CHARACTER OF PROCEEDING:     Civil appeal from the Guernsey County
                             Court of Common Pleas, Case No.10-CV-
                             311

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      August 9, 2012

APPEARANCES:

For Plaintiffs-Appellants          For Defendants-Appellees

CHARLES HESS                       AARON GLASGOW
7211 Sawmill Road                  3005 Tenabo Avenue
Suite 200                          Columbus, OH 43231-3148
Dublin, OH 43016-5010
                                   MARK LANDES
                                   250 East Broad Street, Ste. 900
                                   Columbus, OH 43215-3742

*Gwin, P.J.*

{¶1} Plaintiffs Charles and Margaret Fondale appeal a summary judgment of the Court of Common Pleas of Guernsey County, Ohio, entered in favor of defendants the Guernsey County Children's Services Department and its employees, both individually and in their official capacities: N. Kelley Lynch, Executive Director of Children's Services, Melissa Keylor, Supervisor of Investigations, Patricia Harrelson, Director of Casework Services, and Jeffrey Slaherty, Director of Specialized Services. The court found all defendants were immune from liability pursuant to Chapter 2744 of the Ohio Revised Code. Appellants assign seven errors to the trial court:

{¶2} "I. THE TRIAL COURT ERRED AS A MATTER OF LAW IN ITS JUDGMENT ENTRY DATED JANUARY 30, 2012, THIRD PAGE, FIRST PARAGRAPH, WHEN IT GRANTED SUMMARY JUDGMENT TO APPELLEES ON THE GROUNDS THAT THERE ARE NO GENUINE ISSUES OF MATERIAL FACT REGARDING WHETHER APPELLEES, INDIVIDUALLY OR IN CONCERT, ACTED WITH 'RECKLESSNESS WITH MALICIOUS INTENT' IN THEIR FAILURE TO GATHER APPELLANT'S ATTENDANCE RECORDS AND TO ESTABLISH CLEARLY THE DATE OR DATES OF THE ALLEGED ABUSE BY APPELLANT, CHARLES FONDALE, BECAUSE THE STANDARD OF 'RECKLESSNESS WITH MALICIOUS INTENT' IS A MORE STRINGENT STANDARD THAN IS REQUIRED BY SECTION 2744.03 (6)(B), REVISED CODE, FOR A PARTY TO DEMONSTRATE THE LOSS OF IMMUNITY OF AN EMPLOYEE OF A POLITICAL SUBDIVISION.

{¶3} "II. THE TRIAL COURT ERRED AS A MATTER OF LAW IN ITS JUDGMENT ENTRY DATED JANUARY 30, 2012, THIRD PAGE, SECOND

PARAGRAPH, WHEN IT GRANTED SUMMARY JUDGMENT TO APPELLEES ON THE GROUNDS THAT THERE ARE NO GENUINE ISSUES OF MATERIAL FACT AND AN 'INSUFFICIENT SHOWING FOR REASONABLE MINDS TO CONCLUDE THAT [APPELLEES'] ACTIONS ARE OF A CHARACTER THAT WOULD BE CHARACTERIZED AS RECKLESS OR WANTON DONE WITH ILL WILL TOWARD [APPELLANT] BECAUSE THE STANDARD OF 'RECKLESS OR WANTON DONE WITH ILL WILL' IS A MORE STRINGENT STANDARD THAN IS REQUIRED BY SECTION 2744.03(6)(B), REVISED CODE FOR A PARTY TO DEMONSTRATE THE LOSS OF IMMUNITY OF AN EMPLOYEE OF A POLITICAL SUBDIVISION.

{¶4} "III. THE TRIAL COURT ERRED AS A MATTER OF LAW IN ITS JUDGMENT ENTRY DATED JANUARY 30, 2012, WHEN IT GRANTED SUMMARY JUDGMENT TO APPELLEES WITHOUT DETERMINING WHETHER THERE EXIST GENUINE ISSUES OF MATERIAL FACT REGARDING WHETHER APPELLEES, INDIVIDUALLY OR IN CONCERT, ACTED IN A WANTON OR RECKLESS MANNER IN THEIR FAILURE TO REPORT FULLY AND ACCURATELY TO THE DEPARTMENT OF EDUCATION'S OFFICE OF PROFESSIONAL CONDUCT, AS REQUIRED BY LAW, ALL FACTS PERTINENT TO THE ALLEGATIONS AGAINST APPELLANT, CHARLES FONDALE.

{¶5} "IV. THE TRIAL COURT ERRED AS A MATTER OF LAW IN ITS JUDGMENT ENTRY DATED JANUARY 30, 2012, WHEN IT GRANTED SUMMARY JUDGMENT TO APPELLEES WITHOUT DETERMINING WHETHER THERE EXIST GENUINE ISSUES OF MATERIAL FACT REGARDING WHETHER APPELLEES, INDIVIDUALLY OR IN CONCERT, ACTED IN BAD FAITH IN THE FAILURE TO

REPORT FULLY AND ACCURATELY TO THE DEPARTMENT OF EDUCATION'S OFFICE OF PROFESSIONAL CONDUCT, AS REQUIRED BY LAW, ALL FACTS PERTINENT TO THE ALLEGATIONS AGAINST THE APPELLANT, CHARLES FONDALE.

{¶6} "V. THE TRIAL COURT ERRED AS A MATTER OF LAW IN ITS JUDGMENT ENTRY DATED JANUARY 30, 2012, WHEN IT GRANTED SUMMARY JUDGMENT TO APPELLEES WITHOUT DETERMINING WHETHER THERE EXIST GENUINE ISSUES OF MATERIAL FACT REGARDING WHETHER APPELLEES, INDIVIDUALLY OR IN CONCERT, ACTED WITH MALICIOUS PURPOSE IN THEIR FAILURE TO REPORT FULLY AND ACCURATELY TO THE DEPARTMENT OF EDUCATION'S OFFICE OF PROFESSIONAL CONDUCT, AS REQUIRED BY LAW, ALL FACTS PERTINENT TO THE ALLEGATIONS AGAINST APPELLANT, CHARLES FONDALE.

{¶7} "VI. THE TRIAL COURT ERRED AS MATTER OF LAW IN ITS JUDGMENT ENTRY DATED JANUARY 30, 2012, WHEN IT GRANTED SUMMARY JUDGMENT TO APPELLEES WITHOUT DETERMINING WHETHER THERE EXIST GENUINE ISSUES OF MATERIAL FACT REGARDING WHETHER APPELLEES, INDIVIDUALLY OR IN CONCERT, ACTED WITH MALICIOUS PURPOSE, OR IN BAD FAITH, OR IN A WANTON OR RECKLESS MANNER IN THEIR INVESTIGATION GENERALLY INCLUDING BUT NOT LIMITED TO THEIR FAILURE TO GATHER APPELLANT'S ATTENDANCE RECORDS AND TO ESTABLISH CLEARLY THE DATE OR DATES OF THE ALLEGED ABUSE BY APPELLANT, CHARLES FONDALE.

**{¶8}** "VII.THE TRIAL COURT ERRED AS A MATTER OF LAW IN ITS JUDGMENT ENTRY DATED JANUARY 30, 2012, WHEN IT CONSIDERED AT THE SECOND PAGE, SEVENTH BULLET POINT, THE RESULTS OF THE POLYGRAPH EXAMINATION ADMINISTERED TO APPELLANT BECAUSE THE SAME IS NOT ADMISSIBLE IN COURT NOR IS IT ADMISSIBLE ON MOTION FOR SUMMARY JUDGMENT, PURSUANT TO CIV. R. 56 (C), ABSENT A STIPULATION BY THE PARTIES REACHED DURING THE CASE."

**{¶9}** Appellants' statement pursuant to Loc. App. R. 9 states the judgment is incorrect as a matter of law and also that there are specific material facts in genuine dispute, namely, whether appellees acted in a wanton or reckless manner, acted in bad faith, and/or acted with malicious purpose, any of which would deprive the appellees of their statutory immunity.

**{¶10}** This case requires us to weigh the interests of the State in protecting children against the hazards of damaging an alleged perpetrator's good name and/or health in the course of investigating alleged sexual abuse.   We acknowledge an allegation of sexual abuse lodged against an individual, even if determined to be false, could leave the individual with a permanent haze of suspicion or doubt, and the investigation into such allegations is necessarily stressful.   We find, however, the interest in protecting the children from predators must be paramount.

**{¶11}** Late in November 2008, a ten year old girl, K.S., and her mother reported to the Cambridge Police Department that her elementary school gym teacher, appellant Charles Fondale, had sexually abused her during gym class.  The written report made by the Cambridge Police Department states K.S. reported several occasions on which

the abuse had occurred, although the record does not show whether the appellees had access to the report. The Cambridge Police Department referred the matter to the Ohio Bureau of Criminal Investigations, who in turn contacted appellee Children's Services. Children's Services alleges instead of a caseworker as a primary investigator, it assigned a supervisor, appellee Keylor, to investigate the allegation because of the serious implications for appellant as a teacher.

{¶12} Keylor informed the Superintendant of Cambridge City Schools that appellant was being investigated because of an allegation of sexually abusing a student. Initially the matter centered on November 20, 2008 as the date of a sole incident of inappropriate touching, because the investigators believed K.S. stated the incident occurred on the Thursday before Thanksgiving. Keylor and an agent from BCI interviewed the child, who had been diagnosed as mentally delayed and was enrolled both in learning disabled and mainstream classes in the school. In the interview, K.S. reported a single incident occurring on a Thursday before Thanksgiving.

{¶13} The investigators examined K.S.'s background and found that she and her two older sisters had previously been victims of sexual abuse by a relative. Because of this, K.S., her sisters, and her mother attended counseling sessions with Dr. John Leindecker. Leindecker had been in the process of winding down the counseling relationship because the children had made good progress, but after the new allegation of abuse, Dr. Leindecker began seeing K.S. and her mother again on a weekly basis. In his first report to appellees, Dr. Leindecker indicated there was a single incident of abuse and that he found no reason to believe the child would lie.

{¶14} Dr. Leindecker subsequently discussed his interview with K.S. with Keylor, again indicating he believed K.S. was truthful.

{¶15} BCI agents reported to Keylor BCI had conducted interviews of three teachers at K.S.'s elementary school who worked closely with the child. Two of the teachers stated they noted changes in her behavior at school around the time the alleged abuse occurred. The third teacher did not notice any change in K.S.'s behavior.

{¶16} On December 11, 2008, Keylor spoke with appellant about the allegation of sexual abuse. Appellant had retained an attorney and would not discuss the matter with appellee or BCI without his attorney present. After some delay, appellant's attorney contacted appellee on December 30, 2008 concerning the investigation.

{¶17} On January 22, 2009, appellant and his attorney met with BCI agents and Keylor. The matter was also pending with the prosecutor's office, and appellant gave no statement regarding the allegations. Thereafter, Keylor determined the abuse was "substantiated", based upon her own interviews with the child, the consistency of the story K.S. reported to Keylor with what she had told Dr. Leindecker, because two of the teachers had indicated a change in the child's behavior, and because Dr. Leindecker and the BCI agent believed K.S. was telling the truth.

{¶18} Pursuant to OAC 5101:2-1-01 (LLL), a substantiated report is one in which there is an admission of child abuse or neglect by the person(s) responsible; an adjudication of child abuse or neglect; or other forms of confirmation deemed valid by the PCSA.

{¶19} In early February 2009, appellant appealed the "abuse substantiated" decision, asking it to be determined to be "unsubstantiated". After reviewing the case,

the administrator who heard the appeal changed the determination from "substantiated" to "indicated", a less severe determination. The administrator stated the decision was based on the fact that Keylor and BCI believed the child's recitation of the facts were consistent over multiple interviews at different times, Keylor believed the child to be credible, and the administrator had conducted a site visit of where the incident allegedly occurred. As a result of the investigation, the administrator believed the child reported the abuse occurred on "a" Thursday before Thanksgiving not "the" Thursday before Thanksgiving, which was November 20, 2008.

{¶20} An "abuse indicated" report is defined as one in which there are circumstantial or other isolated indicators of child abuse or neglect lacking confirmation; or a determination by the caseworker that the child may have been abused or neglected based upon completion of an assessment/investigation. OAC 5101:2-1-01(DD).

{¶21} In April 2009, Dr. Leindecker submitted another report to appellee indicating that although the child had first reported a single instance of abuse around Thanksgiving, she was now reporting multiple instances.

{¶22} Appellant appealed the determination of "abuse indicated". Appellant also reviewed his sick leave records and found he was not at the school on November 20, the Thursday before Thanksgiving 2008.

{¶23} During the second appeal, appellant volunteered to take a polygraph test. The hearing officer extended the determination deadline so appellant could take the polygraph test. BCI had already closed its investigation, but administered the test. The operator determined appellant had failed the test, exhibiting deception on three crucial questions concerning the allegations. Thereafter, the hearing officer reviewed the

written report Cambridge Police had taken which indicated the abuse occurred multiple times including Thursday, November 20, 2008.

{¶24} On July 30, 2009, a Grand Jury returned a no bill indictment against appellant.

{¶25} On August 3, 2009, the hearing officer for appellee determined to uphold the "abuse indicated" decision based upon the polygraph results; the special prosecutor's professional opinion that, despite the no bill, K.S. was credible; and the information presented during the investigation in the first appeal.

{¶26} Appellant appealed the matter to the trial court, but then settled the matter with appellee. Appellee agreed to change the determination to "unsubstantiated". Appellee asserts it settled the matter because of the concern the child would be further traumatized if it pursued the case. "Unsubstantiated" means the assessment/ investigation determined there was no occurrence of child abuse. OAC 5101:2-1-01(OOO). The determination of substantiated abuse and the subsequent modifications, ending in unsubstantiated were submitted to the Department of Education.

{¶27} Appellant was placed on paid administrative leave during the pendency of the investigation. At the close of the school year, he retired. In his deposition he asserted he did not intend to return to teaching, but wished to coach for the school system as he had in the past. He stated because of his past history, he needed the prior approval of the Superintendent and the Board of Education, but had not sought their approval, because no other applicant for a coaching contract was required to do so.

**{¶28}** Appellant's complaint alleged defamation, intentional infliction of emotional distress, negligent infliction of emotional distress, invasion of privacy, as well as a count of lost consortium for appellant Margaret Fondale's damages. Appellants requested compensatory and punitive damages plus attorney fees and costs.

**{¶29}** In its judgment entry of January 30, 2012, the trial court found certain material facts are not in dispute: Supervisor Keylor is a trained forensic interviewer, and she found the minor child K.S.'s story to be credible; the BCI agent who attended the interviews with the child agreed with Keylor's assessment; K.S.'s counselor found the allegations truthful; two of the three teachers who were interviewed believed the child began acting out around the same time as the abuse was alleged; appellant failed to provide any evidence to rebut the allegations until well after the 45 day investigation; the prosecutor handling the criminal case believed the child was credible; the appellees were informed that appellant had failed the polygraph examination; and appellee did not act outside the scope of its duties. The trial court noted it was sympathetic to Justice Pfeiffer's dissenting opinion in *Rankin v. Cuyahoga County Department of Children and Family Services,* 118 Ohio St. 3d 392, 2008-Ohio-2567, 889 N.E.2d 521. Justice Pfeiffer had written governmental immunity provisions violate Section 16, Article 1 of the Ohio Constitution, which guarantees every person a remedy in due course of law for an injury done to them. The trial court noted, however, this was a dissent and it was required to follow Ohio law.

**{¶30}** The court found the actions of appellees in not obtaining attendance records and not clearly establishing the date or dates of the alleged abuse could have been negligent, but did not rise to the level of recklessness with malicious intent.

{¶31} R.C. 2744.03 provides an employee of a political subdivision is personally immune from liability unless (a) the acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (b) the acts or omissions were with malicious purpose, bad faith, or wantonly or recklessly; or (c) liability is expressly imposed on the employee by a section of the Revised Code. Allegations of negligence are insufficient to overcome the immunity granted to an employee of a political subdivision who acts within his or her official duties. *Fabrey v. McDonald Village Police Department,* 70 Ohio St. 3d 351, 356, 1994- Ohio- 368, 639 N.E. 2d 31.

{¶32}    Civ. R. 56 states in pertinent part:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability

alone although there is a genuine issue as to the amount of damages.

**{¶33}** A trial court should not enter a summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts, *Houndshell v. American States Insurance Company*, 67 Ohio St. 2d 427 (1981). The court may not resolve ambiguities in the evidence presented, *Inland Refuse Transfer Company v. Browning-Ferris Industries of Ohio, Inc.,* 15 Ohio St. 3d 321 (1984). A fact is material if it affects the outcome of the case under the applicable substantive law, *Russell v. Interim Personnel, Inc.,* 135 Ohio App. 3d 301 (1999).

**{¶34}** When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court, *Smiddy v. The Wedding Party, Inc.* 30 Ohio St. 3d 35 (1987). This means we review the matter de novo, *Doe v. Shaffer,* 90 Ohio St.3d 388, 2000-Ohio-186.

I – VI.

**{¶35}** In their brief, appellants group their first six assignments of error together and we will do likewise for purposes of clarity.

**{¶36}** First, appellants argue the trial court applied the wrong standard in measuring appellees' conduct. The trial court's judgment entry found as a matter of law the facts of the case do not rise to the level of reckless conduct or malicious intent, and could not be characterized as reckless or wantonly done with ill-will. Appellants argue the standard the trial court applied is more stringent than the standard set out in the statute, and the court combined "wanton" and "ill will" such that appellants were required

to demonstrate both.  Appellants also argue the trial court made no finding regarding whether appellees acted in bad faith.

**{¶37}** Appellants correctly cite us to *Rankin, supra,* wherein the court explained the concepts of reckless and wanton.  The court found recklessness is subject to a high standard and refers to conduct committed when the person knows or has reason to know of facts that would lead a reasonable man to realize not only that his conduct creates an unreasonable risk of harm to another, but that the risk is substantially greater than necessary.  Mere negligence is not converted into misconduct unless the evidence establishes a disposition to perversity, such that the actor must be conscious that his conduct will in all probability result in injury.  *Id.*, citations deleted.

**{¶38}** Appellants also cite to our recent case of *Cutts v. Canton,* 5th District No. 1997CA00405, 1998 WL 429910 (July 6, 1998).  In the *Cutts* case, we found wanton misconduct denotes an entire absence of all care for the safety of others, coupled with an indifference to the consequences of the actions.  It implies a failure to exercise any care whatsoever towards those whom a duty of care is owing, when the probability that harm will result from such failure is great and the probability is known to the actor.  It does not require intent or ill will.  *Id.*

**{¶39}** Malice implies a willful and intentional design to do injury or an intention or desire to harm another through conduct which is either unlawful or unjustified.  *Norwell v. Cincinnati,* 133 Ohio App. 3d 790, 729 N.E. 2d 1223 (1999).

**{¶40}** We agree the trial court's judgment entry appears to blur these distinctions but this does not necessarily mean the court elevated the standard to a stricter level or required a showing of recklessness, wantonness, ill will and malice.  Further, we note

the trial court expressly found that appellees' conduct could be considered to rise only at best to the level of negligence.

**{¶41}** Next, appellants allege the appellees' failed to properly report the results of their investigation to the Department of Education. Appellants argue the trial court did not consider this aspect of their case.

**{¶42}** Appellants argue appellees submitted a letter on August 3, 2009, to the Department of Education, which advised the Board appellant refused to provide any information or participate in interviews, with the exception of grievance hearings. Appellants disagree, arguing their insistence on the presence of counsel and refusal to comment while the prosecutor reviewed the matter is not a refusal to cooperate. The letter also reported appellant was found to be deceptive in his polygraph examination. Appellees' letter does not state the date of the alleged abuse, November 20, for which appellant asserts an alibi.

**{¶43}** If the record had shown there was never any question that there was only an allegation of a single instance of abuse, on the specific date appellant was not at school, then appellants' argument might be more persuasive. The parties may have focused on a particular date at first, but the record indicates the child's report may have initially been inaccurate or misunderstood. Appellees urge that it might have been misleading to report a specific date unless they were certain the abuse could only have occurred on that date. The record shows appellees submitted several reports to the Department of Education, updating the information as the investigation progressed. Further, at the very least, Dr. Leindecker's letter in April, 2009, advised appellees the

child had reported multiple instances, and in appellants' favor, his letter implies this was a change from what he understood to be her original statement.

{¶44} Appellants assert the only conclusion one may draw from the August 3 letter is that the appellees acted intentionally to influence the Board of Education's determination, which, they argue, shows a perverse disregard of a known risk, and resulted in appellants' serious emotional and physical trauma.

{¶45} Appellees respond they are required by law to report to the Board of Education information about an abuse investigation, but given the ambiguity surrounding the allegations, the failure to report the possible date of abuse was not perverse, malicious, or made in bad faith. Appellees argue they reported all specific concrete facts about the abuse allegation of which they were aware, and omitted facts that were not clear or established.

{¶46} Appellants do not allege the Department of Education was induced to take any action adverse to their interests as a result of the reports or the length of the investigation, although doubtlessly the entire situation put them under great stress. Ultimately appellees notified the Department the report was unsubstantiated. We find reasonable minds could not differ on the issue of whether appellees inaccurately or misleadingly reported the facts and circumstances of the case as appellees understood them at the time.

{¶47} Appellants also argue they have tangible and intangible damages. Appellant was suspended from teaching near the conclusion of a 38-year career in public service which he characterizes as "stellar". As a result, they assert, appellant must undergo a fitness to teach evaluation if he wishes to resume teaching, and the

effects of the ordeal have caused him to be depressed to the extent of considering suicide. His health issues were exasperated by the stress of the lengthy investigation. He alleges he has also been denied work. As stated *supra,* the record indicates appellant stated in his deposition he did not wish to return to teaching and he never sought approval to work as a coach.

**{¶48}** We find the trial court did not err in finding the actions of appellees did not rise above the level of negligence, and hence, the statutory immunity sheltered them from liability. The first through sixth assignments of error are each overruled.

VII.

**{¶49}** In its seventh assignment of error, appellants argue the trial court improperly considered the polygraph examination results even though such results are normally inadmissible unless certain conditions were met, including a written stipulation signed by all parties. *State v. Souel,* 53 Ohio St. 2d 123, 372 N.E.2d 1218, syllabus by the court. There was no such stipulation here.

**{¶50}** We find the results of the polygraph test were admissible to show appellees' state of mind as they pursued their investigation. See, *e.g. Criss v. Springfield Township,* 56 Ohio St. 3d 123, 372 N.E.2d 1318 (1978), wherein the Supreme Court found in a malicious prosecution case, the results of a polygraph test were admissible to show police investigators' state of mind even though there was no written stipulation signed by all parties.

**{¶51}** In determining whether appellees' actions were more than negligent, the trial court had to review all the information appellees had before them as they made their decisions throughout the investigation. The trial court did not and could not find

that the polygraph results demonstrated appellant was guilty, nor even find that appellant had actually failed the polygraph test. But the court properly reviewed the factors appellees had, including the results of the polygraph test, which may have influenced their decisions in investigating the matter.

**{¶52}** The seventh assignment of error is overruled.

**{¶53}** For the foregoing reasons, the judgment of the Court of Common Pleas of Guernsey County, Ohio, is affirmed.

By Gwin, P.J.,

Wise, J., and

Edwards, J., concur

_____
HON. W. SCOTT GWIN


_____
HON. JOHN W. WISE


_____
HON. JULIE A. EDWARDS


WSG:clw 0713

[Cite as *Fondale v. Guernsey Cty. Children's Servs.*, 2012-Ohio-3621.]

IN THE COURT OF APPEALS FOR GUERNSEY COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| CHARLES AND MARGARET FONDALE | : | |
| | : | |
| Plaintiffs-Appellants | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| GUERNSEY COUNTY CHILDREN'S SERVICES, ET AL | : | |
| | : | |
| | : | |
| Defendants-Appellees | : | CASE NO. 2012-CA-7 |

    For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Guernsey County, Ohio, is affirmed.  Costs to appellants.

_____

HON. W. SCOTT GWIN

_____

HON. JOHN W. WISE

_____

HON. JULIE A. EDWARDS