THOMPSON, Admr., Appellee,

v.

SMITH et al., Appellants.

[Cite as *Thompson v. Smith,* 178 Ohio App.3d 656, 2008-Ohio-5532.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 2008–T–0007.

Decided Oct. 24, 2008.

658

Buckingham, Doolittle & Burroughs, L.L.P., and Lee J. Bell; and Urban Co., L.P.A., and William J. Urban Jr., for appellee.

Pelini, Campbell, Williams & Traub, L.L.C., and Craig G. Pelini and Kristen E. Campbell, for appellants.

---

MARY JANE TRAPP, Judge.

{¶ 1} Appellants, Officer Jason Smith ("Officer Smith"), the city of Cortland and the Cortland Police Department (collectively "Cortland"), appeal from a judgment of the Trumbull County Court of Common Pleas in connection with a wrongful-death suit filed by the administrator of the estate of Cassandra Thompson. Cassandra Thompson, while crossing a street without using a pedestrian crossing, was struck by the vehicle driven by Officer Smith en route to a dispatched call. Officer Smith and Cortland moved the trial court for summary judgment asserting immunity pursuant to R.C. Chapter 2744. The trial court denied the motion on the ground that evidence in this case creates a genuine issue of material fact as to whether Officer Smith operated his vehicle in a willful or wanton manner.

{¶ 2} Inasmuch as there is conflicting evidence as to the speed of Officer Smith's vehicle and uncontroverted evidence that the emergency lights and sirens were not in use, a jury, not the court, must decide whether the officer failed to exercise any care in a situation where there was a great probability that harm would result. There is no assertion that Officer Smith acted maliciously or in bad faith, but a jury, not the court, must decide if the officer acted with a reckless disregard of the safety of others in a situation that would lead an officer to recognize that his conduct would not only create an unreasonable risk of harm but also that the risk created goes beyond negligence. We also find that responding to an emergency call does not involve the "policy-making, planning or enforcement powers" contemplated by the immunity statute. Thus, we affirm the decision of the trial court.

**{¶ 3} Substantive Facts and Procedural History**

{¶ 4} Around 11:30 p.m. on July 25, 2006, Officer Smith and Officer Thomas Andrews, both police officers of the Cortland Police Department, received a call from a dispatcher while they were at a gas station. The dispatch call related to a possible fight on Stahl Avenue in Cortland. In response, Officer Smith drove toward the location, but did not activate his overhead flashing lights or sirens. As he approached South High Street, he slowed down for the red light, and, when he was 50 yards from the intersection, the red light turned green, and he started to accelerate again and proceeded through the intersection, turning right into the northbound lane of South High Street. Shortly after, as he approached a Circle K store on South High Street, he saw a pedestrian in the southbound lane running across the street and heading toward a house on the other side of the street. Officer Smith immediately applied his brakes, but could not avoid striking the pedestrian, 16–year–old Cassandra Thompson, who died from the injuries sustained in the accident.

{¶ 5} The evidence in the record shows that Ms. Thompson did not use a pedestrian crossing nearby to cross South High Street, which Officer Smith described as well-lit. The posted speed limit for the street was 35 m.p.h., but there is conflicting evidence as to the speed at which Officer Smith was travelling. He testified he was traveling at no more than 45 m.p.h. before the impact. The Ohio State Highway Patrol, however, estimated his speed to be at least 38 m.p.h. and probably within a range of 59 m.p.h. to 66 m.p.h.

{¶ 6} On November 26, 2006, William Thompson ("Mr. Thompson"), the administrator of Ms. Thompson's estate, filed the instant suit against Officer Smith, the Cortland Police Department, and the city of Cortland. On September 28, 2007, the defendants filed a motion for summary judgment, asserting that they are entitled to immunity pursuant to R.C. 2744.02 and 2744.03.

{¶ 7} The trial court denied the defendants' motion for summary judgment, finding that a genuine issue of material fact remains as to whether Officer Smith operated his vehicle in a willful, wanton, or reckless manner, which, if true, would remove the immunity afforded by the statutes.

{¶ 8} Officer Smith and Cortland filed a timely appeal, raising two assignments of error:

{¶ 9} "[1.] The trial court erred in denying the Cortland Defendants' motion for summary judgment.

{¶ 10} "[2.] The trial court erred in denying summary judgment to the City of Cortland and Cortland Police Department by finding that R.C. 2744.03(A)(3) is not applicable."

{¶ 11} As an initial matter, we recognize that a denial of summary judgment generally is not a final, appealable order. However, "[w]hen a trial court denies a motion in which a political subdivision or its employee seeks immunity under R.C. Chapter 2744, that order denies the benefit of an alleged immunity and is therefore a final, appealable order pursuant to R.C. 2744.02(C)." *Hubbell v. Xenia*, 115 Ohio St.3d 77, 873 N.E.2d 878, syllabus.

{¶ 12} **Summary Judgment**

{¶ 13} Summary judgment is appropriate under Civ.R. 56(C) when (1) there is no genuine issue of material fact remaining to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and, viewing the evidence in favor of the nonmoving party, that conclusion favors the moving party. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

{¶ 14} "[S]ummary judgment may not be granted until the moving party sufficiently demonstrates the absence of a genuine issue of material fact. The moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Brunstetter v. Keating*, 11th Dist. No. 2002–T–0057, 2003-Ohio-3270, 2003 WL 21437016, ¶ 12, citing *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292, 662 N.E.2d 264. "Once the moving party meets the initial burden, the nonmoving party must then set forth specific facts demonstrating that a genuine issue of material fact does exist that must be preserved for trial, and if the nonmoving party does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." *Brunstetter*, citing *Dresher* at 293, 662 N.E.2d 264.

{¶ 15} "Since summary judgment denies the party his or her 'day in court' it is not to be viewed lightly as docket control or as a 'little trial.' The jurisprudence of summary judgment standards has placed burdens on both the moving and the nonmoving party. In *Dresher v. Burt*, the Supreme Court of Ohio held that the moving party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record before the trial court that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. The evidence must be in the record or the motion cannot succeed. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case but must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial

burden, the motion for summary judgment must be denied. If the moving party has satisfied its initial burden, the nonmoving party has a reciprocal burden outlined in the last sentence of Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial. If the nonmoving party fails to do so, summary judgment, if appropriate[,] shall be entered against the nonmoving party based on the principles that have been firmly established in Ohio for quite some time in *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798." *Welch v. Ziccarelli*, 11th Dist. No. 2006–L–229, 2007-Ohio-4374, 2007 WL 2410102, ¶ 40.

{¶ 16} "When reviewing a summary judgment case, appellate courts apply a de novo standard of review. A reviewing court will apply the same standard a trial court is required to apply, which is to determine whether any genuine issues of material fact exist and whether the moving party is entitled to judgment as a matter of law." (Footnotes omitted.) *Hapgood v. Conrad*, 11th Dist. No. 2000–T0058, 2002-Ohio-3363, 2002 WL 1400583, ¶ 13.

{¶ 17} In their first assignment of error, Officer Smith and Cortland contend that the trial court erred when it found a question of fact exists regarding whether Officer Smith's conduct was willful, wanton, or reckless and denied their motion for summary judgment predicated on immunity granted to a political subdivision in R.C. 2744.02(B)(1)(a) and its employees in R.C. 2744.03(A)(6).

{¶ 18} **Political Subdivision Immunity Pursuant to R.C. 2744.02(B)(1)(a)**

{¶ 19} R.C. Chapter 2744, the Political Subdivision Tort Liability Act, contains a comprehensive statutory scheme for the tort liability of political subdivisions and its employees. R.C. 2744.02(A)(1), which grants immunity to a political subdivision from civil liability, provides:

{¶ 20} "For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."

{¶ 21} Section (B) of R.C. 2744.02 enumerates five exceptions to the general grant of immunity. Of the five exceptions, only (B)(1) is applicable in the instant case. Pursuant to R.C. 2744.02(B)(1), although a political subdivision generally enjoys immunity from civil tort liability, it is nonetheless held liable for its employees' negligent operation of a motor vehicle, with certain exceptions. R.C. 2744.02(B) provides:

{¶ 22} "Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person

or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:

{¶ 23} "(1) Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority."

{¶ 24} R.C. 2744.02(1) goes on to enumerate three full defenses to that liability. Of the three defenses, only section (a) is applicable in the instant case. R.C. 2744.02(B)(1)(a) states:

{¶ 25} "A member of a municipal corporation police department or any other police agency was operating a motor vehicle while responding to an emergency call and the operation of the vehicle did not constitute willful or wanton misconduct."

{¶ 26} **A Three–Tiered Analysis for Political Subdivision Immunity**

{¶ 27} As summarized by the court in *Colbert v. Cleveland,* 99 Ohio St.3d 215, 790 N.E.2d 781, ¶ 7–9, the following three-tiered analysis applies in matters implicating political subdivision immunity:

{¶ 28} "Determining whether a political subdivision is immune from tort liability pursuant to R.C. Chapter 2744 involves a three-tiered analysis. The first tier is the general rule that a political subdivision is immune from liability incurred in performing either a governmental function or proprietary function. However, that immunity is not absolute. The second tier of the analysis requires a court to determine whether any of the five exceptions to immunity listed in R.C. 2744.02(B) apply to expose the political subdivision to liability. At this tier, the court may also need to determine whether specific defenses to liability for negligent operation of a motor vehicle listed in R.C. 2744.02(B)(1)(a) through (c) apply.

{¶ 29} "If any of the exceptions to immunity in R.C. 2744.02(B) do apply and no defense in that section protects the political subdivision from liability, then the third tier of the analysis requires a court to determine whether any of the defenses in R.C. 2744.03 apply, thereby providing the political subdivision a defense against liability." (Citations omitted.)

{¶ 30} **Police Officer's Operation of a Motor Vehicle**

{¶ 31} In *Ferrell v. Windham Twp. Police Dept.* (Mar. 27, 1998), 11th Dist. No. 97–P–0035, 1998 WL 156889, this court summarized the law regarding political subdivision immunity in a tort action specifically involving a police officer's operation of a motor vehicle:

{¶ 32} "R.C. 2744.02(B)(1) provides that a political subdivision is liable for a death caused by the negligent operation of a motor vehicle by one of its employees within the scope of his or her employment. However, R.C. 2744.02(B)(1)(a) states that a political subdivision has a complete defense to liability if a member of its police department 'was operating a motor vehicle while responding to an emergency call and the operation of the vehicle did not constitute willful or wanton misconduct.' Therefore, the two issues to be analyzed here are (1) whether [the police officer] was responding to an emergency call; and (2) whether [the police officer's] actions constituted wanton and willful misconduct." Id. at *3.

{¶ 33} In the instant case, the city of Cortland is entitled to immunity available to a political subdivision and not liable for Ms. Thompson's death if it can successfully establish that (1) Officer Smith was operating a motor vehicle while "responding to an emergency call" when his vehicle struck Ms. Thompson *and* (2) "the operation of the vehicle did not constitute willful or wanton misconduct." R.C. 2744.02(B)(1)(a).

{¶ 34} **Emergency Call**

{¶ 35} Regarding the issue of whether Officer Smith was responding to an emergency call when his vehicle struck Ms. Thompson, R.C. 2744.01(A) defines an "emergency call" as "a call to duty, including, but not limited to, communications from citizens, police dispatches, and personal observations by peace officers of inherently dangerous situations that demand an immediate response on the part of a peace officer." The Supreme Court of Ohio, in *Colbert*, further interpreted an "emergency call" as "involv[ing] a situation to which a response by a peace officer is required by the officer's professional obligation." Id. at syllabus.

{¶ 36} The trial court in the instant case found that Officer Smith was responding to a dispatched call given moments before the collision. Although another officer, Officer Andrews, was also en route to this call and there was some confusion over which officer was actually dispatched to take the call and whether both officers were expected to respond, the trial court found that "it is clear that Smith felt compelled by a professional obligation to respond to the call to assist the other officer." The trial court therefore concluded that Officer Smith "was called to duty" and therefore he was responding to an "emergency call" for purposes of R.C. 2744.02(B)(1)(a).[1]

---

1. Despite this finding by the trial court, appellee asserts in his brief that a question of fact remains regarding whether Officer Smith was responding to an emergency call. We must point out here that if appellee wishes to challenge the trial court's determination on this issue, that challenge must be raised in a cross-appeal, which was not filed in this case. See App.R. 3(C)(1) ("A person who intends to defend a judgment or order against an appeal taken by an

**{¶ 37} Willful or Wanton Misconduct**

■ **{¶ 38}** However, in order to claim the defense available in R.C. 2744.02(B)(1)(a), which is written in the conjunctive, a political subdivision must establish both that (1) the police office was responding to an "emergency call" and (2) the officer's operation of the vehicle did not constitute willful or wanton misconduct.

**{¶ 39}** Regarding the issue of whether Officer Smith's operation of his vehicle on the night of the incident constituted "willful" or "wanton" misconduct, the statute itself does not set forth a definition for these terms. The Supreme Court of Ohio, however, had defined these terms on various occasions.

**{¶ 40}** A two-part test has been applied for a determination of "wanton" misconduct. "First, there is a failure to exercise any care whatsoever by those who owe a duty of care to the appellant. Secondly, this failure occurs under circumstances in which there is great probability that harm will result from the lack of care. The first prong of the test requires that we determine the duty appellees owed appellant, and also the extent of care exercised by appellees. Then, we must consider the nature of the hazard created by the circumstances." *Matkovich v. Penn Cent. Transp. Co.* (1982), 69 Ohio St.2d 210, 212, 23 O.O.3d 224, 431 N.E.2d 652. See also *Hawkins v. Ivy* (1977), 50 Ohio St.2d 114, 4 O.O.3d 243, 363 N.E.2d 367, syllabus (where the driver of an automobile fails to exercise any care whatsoever toward those to whom he owes a duty of care, and his failure occurs under circumstances in which there is great probability that harm will result, such failure constitutes wanton misconduct); *Tighe v. Diamond* (1948), 149 Ohio St. 520, 526, 37 O.O. 243, 80 N.E.2d 122 (wanton misconduct "comprehends an entire absence of all care for the safety of others and an indifference to consequences"; "[i]t implies a failure to exercise any care toward those to whom a duty of care is owing when the probability that harm will result from such failure is great, and such probability is known to the actor. It is not necessary that an injury be intended or that there be any ill will on the part of the actor toward the person injured as a result of such conduct"); *Brockman v. Bell* (1992), 78 Ohio App.3d 508, 605 N.E.2d 445.

■ **{¶ 41}** As to "willful misconduct," it "implies an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposely doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury." *Tighe,* 149 Ohio

---

appellant and who also seeks to change the judgment or order * * * shall file a notice of cross appeal"). Because this issue is not properly raised in a cross-appeal, we cannot review it.

St. at 527, 37 O.O. 243, 80 N.E.2d 122;  see also *Brockman,* 78 Ohio App.3d at 515, 605 N.E.2d 445.

{¶ 42} When determining whether a political subdivision employee's conduct was willful or wanton as to remove the immunity afforded under R.C. 2744.02, the courts have emphasized the importance of evaluating each case under its own circumstances.

{¶ 43} "The term 'willful and wanton misconduct' connotes behavior demonstrating a deliberate or reckless disregard for the safety of others, but because the line between such misconduct and ordinary negligence is sometimes a fine one depending on the particular facts of a case, it is generally recognized that such issue is for the jury to decide.  The issue should not be withheld from the jury where reasonable minds might differ as to the import of the evidence." (Citations omitted.)  *Reynolds v. Oakwood* (1987), 38 Ohio App.3d 125, 127, 528 N.E.2d 578.  See also *Fabrey v. McDonald Village Police Dept.* (1994), 70 Ohio St.3d 351, 356, 639 N.E.2d 31 (the issue of wanton misconduct is normally a jury question);  *Brockman,* 78 Ohio App.3d 508, 605 N.E.2d 445 (because the line between willful and wanton misconduct and ordinary negligence can be a fine one, the issue of whether conduct was willful or wanton should be submitted to the jury for consideration in light of the surrounding circumstances when reasonable minds might differ as to the import of the evidence);  *Robertson v. Roberts,* 11th Dist. No. 2003–T–0125, 2004-Ohio-7231, 2004 WL 3090216, ¶ 23.

{¶ 44} In this case, uncontroverted evidence shows that the incident occurred around midnight on a well-lit street, Ms. Thompson failed to use a pedestrian crossing while crossing the street, and Officer Smith did not utilize his emergency lights or sirens en route to a dispatched call.  However, conflicting evidence exists as to the speed of Officer Smith's vehicle before it struck Ms. Thompson.  While the road had a posted speed limit of 35 m.p.h., Officer Smith testified that he was traveling between 35 to 45 m.p.h.  The State Highway Patrol's investigation of the incident, however, indicated a speed of at least 38 m.p.h. and probably within a range of 59 m.p.h. to 66 m.p.h.

{¶ 45} Furthermore, the record includes an affidavit by plaintiff's expert, Officer Glenn McHenry, who opined that Officer Smith willfully and wantonly operated his vehicle by traveling at an excessive speed without using his emergency equipment.

{¶ 46} Given this state of the evidence and mindful that the line between willful and wanton misconduct and ordinary negligence can be a fine one, we agree with the trial court that the speed at which Officer Smith travelled, coupled with the lack of the use of the emergency lights and sirens, creates a genuine issue of material fact as to whether his conduct was "willful" or "wanton" while respond-

ing to an emergency call relating to a possible fight on the night of July 25, 2006. The trial court properly deferred to the jury for a determination of whether Officer Smith, by exceeding the speed limit and not utilizing his emergency equipment, failed to exercise any care owed to Ms. Thompson under circumstances where there was a great probability that harm would result from his lack of care, and whether he intentionally deviated from a clear duty with a deliberate purpose not to discharge some duty necessary to safety. *Matkovich*, 69 Ohio St.2d at 212, 23 O.O.3d 224, 431 N.E.2d 652, and *Tighe*, 149 Ohio St. at 527, 37 O.O. 243, 80 N.E.2d 122. To resolve these issues, it is necessary to weigh conflicting evidence and determine an ultimate fact upon the determination of which different minds might reasonably arrive at different conclusions. This function is to be performed by the jury.

{¶ 47} Therefore, the trial court in the instant case properly declined to invade the province of the jury and denied summary judgment sought by Officer Smith and Cortland on the issue of whether Cortland is entitled to immunity pursuant to R.C. 2744.02(B)(1)(a).

{¶ 48} Officer Smith and Cortland cited several appellate decisions to support their position that Officer Smith's conduct in this case did not rise to the level of willful or wanton misconduct, and therefore Cortland is entitled to immunity pursuant to R.C. 2744.02(B)(1)(a). We have reviewed these decisions. None are apposite to the instant matter.

{¶ 49} In *Sparks v. Cleveland*, 8th Dist. No. 81715, 2003-Ohio-1172, 2003 WL 1090703, the appellate court affirmed the summary judgment in favor of the city of Cleveland in a tort action filed by plaintiffs whose vehicle collided with the vehicle of a Cleveland police officer. In that case, while responding to a call regarding a man threatening with a knife, the officer collided with plaintiffs' vehicle when he made a U-turn after realizing he had just passed the location where the reported incident occurred. The officer testified that he utilized his overhead lights but did not have the sirens on for fear of alerting the suspect of his imminent arrival, while a witness testified that the officer slowed down his vehicle, shut off his lights, and pulled over to the side of the road prior to attempting to make a U-turn. The court concluded that the evidence at best showed negligent conduct by the officer but did not create a genuine issue of material fact regarding whether the officer had acted wantonly and recklessly.

{¶ 50} In *Cunningham v. Akron*, 9th Dist. No. 22818, 2006-Ohio-519, 2006 WL 290100, a police officer turned on his emergency lights and sirens to pursue a driver who had run a red light. The officer also utilized his air horn three times prior to accelerating and entering an intersection, traveling left of center, which caused his vehicle to collide with the plaintiffs' vehicle. The Ninth District held

that under these circumstances the officer's conduct was neither wanton nor willful.

{¶ 51} *Sparks* and *Cunningham* are factually distinguishable from the instant case. Officer Smith's failure to use any of his emergency equipment, coupled with his driving in excess of the speed limit, was a key factor in the trial court's determination that a genuine issue of material fact existed as to whether his conduct was willful or wanton. In contrast, the officer in Sparks used his overhead lights, but turned them off when he reached the area where the reported incident occurred for fear of alerting the suspect; in *Cunningham* the officer engaged his emergency lights and sirens, as well as air horns. Therefore, Officer Smith and Cortland's reliance in these cases is misplaced.

{¶ 52} In *Ybarra v. Vidra*, 6th Dist. No. WD–04–061, 2005-Ohio-2497, 2005 WL 1201224, a police officer responded to a dispatch regarding a domestic dispute, traveling at a speed of 45 m.p.h. on a 35–m.p.h. road with his sirens and emergency lights activated. Approaching an intersection, the officer encountered red lights, but saw that several other cars had pulled to the side in response to his sirens and lights. He proceeded to enter the intersection and collided with the plaintiff's vehicle. The Sixth District held that the officer's conduct did not rise to the level required to abrogate the appellee's immunity. The court reasoned that although the parties disputed whether the officer slowed as he approached the intersection, the totality of the circumstances precludes a finding that reasonable minds could differ as to the absence of wanton or willful misconduct by the officer.

{¶ 53} The court in *Ybarra* pointed to evidence showing that the officer engaged his lights and sirens; that other drivers saw the cruiser's approach and pulled their vehicles to the side; that the weather conditions were optimal for seeing or hearing the officer's approach; and that the officer's vehicle was traveling 45 m.p.h. at most in a 35–m.p.h. zone. These circumstances are clearly distinguishable from the instant case, where Officer Smith failed to engage any of his emergency equipment and likely travelled at a much higher speed.

{¶ 54} Officer Smith and Cortland also cited *Elsass v. Crockett*, 9th Dist. No. 22282, 2005-Ohio-2142, 2005 WL 1026700. In that case, an officer was responding to a dispatch involving a stabbing incident. The officer was driving at between 35 and 45 m.p.h. in a 25–m.p.h. zone and, when he approached the reported crime scene, he turned off his sirens and overhead lights so as not to alert the suspect still in the area. The officer's vehicle then collided with the plaintiff's vehicle, when the plaintiff's vehicle made a U-turn into the officer's path. The court held that under these circumstances, the officer's action did not constitute wanton or willful misconduct—he was not traveling at an excessive rate of speed, and his duty to apprehend a suspect involved in a serious felony necessitated stealth and

haste. Furthermore, he had a reasonable expectation that he could drive in a passing lane unimpeded by curb-lane traffic making U-turns. These circumstances are not present in the instant case.

{¶ 55} None of the appellate cases cited by Officer Smith and Cortland are factually similar to the instant case, and therefore they are not dispositive of the instant matter. We again emphasize that the line between willful or wanton misconduct and ordinary negligence is a fine one depending on the particular facts of a case. The trial court, in the instant case, properly submitted to the jury the issue of whether Officer Smith's operation of his police cruiser constituted willful or wanton misconduct when it travelled at a speed between 38 and 66 m.p.h. in a 35–m.p.h. zone without activating any warning devices.

{¶ 56} **Officer Immunity Pursuant to R.C. 2744.03(A)(6)**

{¶ 57} In the second assignment of error, Officer Smith and Cortland also assert that Officer Smith is entitled to immunity in his individual capacity as an employee of a political subdivision pursuant to R.C. 2744.03(A)(6)(b).

{¶ 58} There is no dispute that Officer Smith, a Cortland police officer at the time of the accident, was an employee of a political subdivision. As such, he is entitled to immunity pursuant to R.C. 2744.03(A)(6) when certain conditions are met. R.C. 2744.03(A)(6) sets forth the circumstances under which an employee of a political subdivision is immune from civil liability for damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function. That statute provides:

{¶ 59} "In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability *unless* one of the following applies:

{¶ 60} "(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;

{¶ 61} "(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

{¶ 62} "(c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because that section provides for a criminal penalty, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term 'shall' in a provision pertaining to an employee."

{¶ 63} R.C. 2744.03(A)(6) thus provides a presumption of immunity for a individual political subdivision employee unless (a) the employee's acts or omissions were manifestly outside the scope of the employee's employment, (b) the employee acted with malicious purpose, in bad faith, or in wanton or reckless manner, or (3) civil liability is expressly imposed upon the employee by a section of the Revised Code.

{¶ 64} It is undisputed that Officer Smith was acting within scope of his employment when he travelled en route to a dispatched call at the time of the incident; likewise, R.C. 2744.03(A)(6)(c) does not apply in this case. Therefore, of the three enumerated exceptions to individual employee immunity, the only exception pertinent to the instant matter is R.C. 2744.03(A)(6)(b).

{¶ 65} There is no contention that Officer Smith acted with malicious purpose or in bad faith. The only issue to be resolved is whether his acts were wanton or reckless, revoking the immunity he would have enjoyed pursuant to R.C. 2744.03(A)(6). The trial court denied summary judgment on this issue, holding the circumstances here creates a genuine issue of fact as to whether the officer's actions were wanton or reckless rendering him liable for Ms. Thompson's death despite the immunity provided in the statute.

{¶ 66} We have concluded above that the trial court properly deferred to the jury the issue of whether Officer Smith acted in a wanton manner. As to whether he acted recklessly, an actor's conduct is " ' "in reckless disregard of the safety of others if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent." ' " *O'Toole v. Denihan*, 118 Ohio St.3d 374, 889 N.E.2d 505, ¶ 73, quoting *Thompson v. McNeill* (1990), 53 Ohio St.3d 102, 104–105, 559 N.E.2d 705, and 2 Restatement of the Law 2d, Torts (1965) 587, Section 500.

{¶ 67} As with the issue of wanton conduct, the determination of reckless conduct is also a question generally for the jury. *Cobb v. Mantua Twp. Bd. of Trustees* (Dec. 14, 2001), 11th Dist. No. 2000–P–0127, 2001 WL 1602680, *5, citing *Fabrey v. McDonald*, 70 Ohio St.3d at 356, 639 N.E.2d 31 (generally, the issues of malice, bad faith, and wanton or reckless behavior are questions for the jury). Given the particular circumstances of this case, we agree with the trial court that a jury should determine whether Officer Smith's actions show that he had knowledge or reason to know of facts that would lead a reasonable person to believe that his conduct created an unnecessary risk of physical harm and that

such risk was substantially greater than that which was necessary to make his conduct negligent.

{¶ 68} Construing the evidence in a light most favorable to the nonmoving party, we affirm the trial court's denial of summary judgment on the issues of whether Cortland and Officer Smith are entitled to immunity pursuant to R.C. 2744.02(B)(1)(a) (political subdivision immunity) and R.C. 2744.03(A)(6) (employee immunity), respectively. The first assignment of error is without merit.

{¶ 69} **Applicability of R.C. 2744.03(A)(3)**

{¶ 70} In the second assignment of error, Officer Smith and Cortland assert a separate basis of political subdivision immunity set forth in R.C. 2744.03(A)(3). R.C. 2744.03(A) states:

{¶ 71} "In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:

{¶ 72} " * * *

{¶ 73} " * * *

{¶ 74} "(3) The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee."

{¶ 75} Cortland claims that it qualifies for the defense provided in R.C. 2744.03(A)(3) because the manner in which an officer responds to an emergency call, including whether to use the overhead lights and sirens, is left to the discretion of the individual officer.

{¶ 76} The record in this case contains testimony from Chief Mink of Cortland Police Department, Officer Smith, and Officer Andrews showing that in accordance with the Cortland Police Department manual, the manner of response to a dispatched call, including the use or nonuse of emergency lights and sirens, and the speed of travel, are subject to an individual officer's discretion.

{¶ 77} However, we note that there is a statutory requirement for the use of emergency equipment when a police officer travels above the speed limit. Pursuant to R.C. 4511.041, the requirement to operate a vehicle within the speed limit does not apply to an "emergency or public safety vehicle responding to emergency call" only "if the emergency vehicle or public safety vehicle is responding to an emergency call, is equipped with *and displaying at least* one

flashing, rotating, or oscillating light visible under normal atmospheric conditions from a distance of five hundred feet to the front of the vehicle and if the driver of the vehicle is giving an audible signal by siren, exhaust whistle, or bell. This section does not relieve the driver of an emergency vehicle or public safety vehicle from the duty to drive with due regard for the safety of all persons and property upon the highway." (Emphasis added.)

{¶ 78} Therefore, for the purposes of R.C. 2744.03(A)(3), despite the provisions in the Cortland Police Department manual, it is unclear whether Officer Smith has complete discretion regarding his speed of travel and the use of his emergency equipment when responding to an emergency call.

{¶ 79} More important, showing that the manner of response to a dispatched call is discretionary is not sufficient to invoke the defense available in R.C. 2744.03(A)(3). This is because the defense provided in the statute only applies to "policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee."

{¶ 80} The trial court in the instant case found that in responding to the dispatched call, Officer Smith was not engaged in policy-making, planning, or enforcement powers. We agree. None of the cases cited by Cortland support the availability of the R.C. 2744.03(A)(3) defense under the circumstances of this case, because none relate to a police officer's operation of a vehicle in response to an emergency call. Our own research also discloses no case authority that considers the police duty of responding to an emergency call as involving "policy-making, planning, or enforcement powers" contemplated by the statute.

{¶ 81} Therefore, we affirm the trial court's determination that the R.C. 2744.03(A)(3) defense does not apply in this case. The second assignment of error is not well taken.

{¶ 82} For all the foregoing reasons, we affirm the trial court's denial of the motion of summary judgment filed by Officer Smith, the city of Cortland, and the Cortland Police Department.

Judgment affirmed.

CANNON, J., concurs.

GRENDELL, P.J., dissents.

DIANE V. GRENDELL, Presiding Judge, dissenting.

{¶ 83} I respectfully dissent. While Miss Thompson's death was tragic, Officer Smith's operation of his vehicle did not constitute willful or wanton misconduct. Wanton misconduct "comprehends an entire absence of all care for the safety of others and an indifference to consequences." *Tighe v. Diamond* (1948), 149 Ohio

St. 520, 526, 37 O.O. 243, 80 N.E.2d 122. Willful misconduct "implies intent, but the intention relates to the misconduct and not merely to the fact that some specific act, such as operating an automobile, was intentionally done." Id. at 527, 37 O.O. 243, 80 N.E.2d 122.

{¶ 84} Officer Smith's behavior did not reflect a deliberate or reckless disregard for the safety of others; he utilized a degree of care in response to the emergency call. He testified that he drove approximately 35 to 45 miles per hour, in a 45–mile–per–hour zone, with clear weather and visibility. While there may be differing views about Smith's speed, "[t]he parties' dispute as to * * * his actual speed does not * * * preclude a grant of summary judgment." *Ybarra v. Vidra*, 6th Dist. No. WD–04–061, 2005-Ohio-2497, 2005 WL 1201224, at ¶ 18. Although Smith did not activate his flashing lights or siren, Smith was trained that he could use discretion as to whether to utilize the overhead lights and/or siren on his cruiser when responding to an emergency call. Smith did not drive through red traffic lights. He testified that he slowed for a red light, waiting until the signal turned green, and then proceeded through the intersection. Smith observed Cassandra Thompson running across the road, failing to make use of the nearby crosswalk, and failing to look at the oncoming traffic. He attempted to brake; however, he could not avoid Thompson. Under the overall circumstances, there was not a great probability that harm would occur, absent someone crossing the street outside of a crosswalk. Smith had a reasonable expectation that he could drive at 11:30 p.m. in a lane unimpeded by a pedestrian, who failed to utilize the crosswalk and yield to oncoming traffic by running across the street. Officer Smith attempted to stop his vehicle, and he obeyed traffic lights. The facts presented do not demonstrate that Smith was indifferent to the safety of others and/or that he deliberately failed to discharge some duty necessary to safety. See *Tighe*, 149 Ohio St. at 527, 37 O.O. 243, 80 N.E.2d 122.

{¶ 85} When Officer Smith received the call from dispatch, it was late at night; he used his authorized discretion and chose not to utilize the lights and siren on his cruiser. At most, his conduct rises to negligence, and then, only with respect to his speed. This court has previously held that when "[c]onsidering the totality of the evidentiary materials" if "there is no evidence that [the][o]fficer * * * acted in deliberate or reckless disregard for the safety of others" then "as a matter of law, there is no material issue of fact regarding whether [the] [o]fficer['s] * * * conduct constituted 'willful or wanton misconduct'" and summary judgment should be granted. *Rodgers v. DeRue* (1991), 75 Ohio App.3d 200, 205, 598 N.E.2d 1312.

{¶ 86} Officer Smith's conduct did not rise to the level of willful, wanton, or reckless misconduct. The city of Cortland, the Cortland Police Department, and

Officer Smith are entitled to immunity under R.C. Chapter 2744 and, accordingly, summary judgment was warranted.

{¶ 87} Since this case should be reversed on the first assignment of error, there is no need to address the second assignment of error because it is moot. The judgment of the Trumbull County Court of Common Pleas should be reversed.