**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0147n.06

**No. 10-3516**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Feb 07, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| SANDRA FARINACCI, et al., | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| Plaintiffs-Appellants, | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| v. | ) | OHIO |
| | ) | |
| CITY OF GARFIELD HEIGHTS, et al., | ) | O P I N I O N |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE:    McKEAGUE, and WHITE, Circuit Judges; BARRETT, District Judge.[*]

BARRETT, District Judge.   Mother and daughter Sandra and Kim Farinacci brought constitutional claims under 42 U.S.C. § 1983 against the City of Garfield Heights and six of its employees.  The Farninaccis also brought state law claims for trespass, invasion of privacy and intentional infliction of emotional distress.  The Farinaccis' claims stem from the warrantless entry into Sandra Farinacci's home to remove a number of cats who were living there.  The Farinaccis' claims are also based on a letter written by the City's building commissioner which states that the Farinacci home was vacant and abandoned.  The Farinaccis appeal the district court's conclusion that the City employees are entitled to qualified immunity on the constitutional claims and statutory immunity on the tort claims.  The Farinaccis also appeal the dismissal of their *Monell* claims against the City.  For the reasons set forth below, we **AFFIRM** the district court.

---

[*]Honorable Michael R. Barrett, United States District Judge for the Southern District of Ohio, sitting by designation.

No. 10-3516

**STATEMENT OF FACTS**

Sandra Farinacci lived in her home on Mountview Avenue in Garfield Heights, Ohio for thirty-seven years. (R. 59-1, at 1.) In January of 2006, Sandra fell into default on her mortgage on the property. (R. 51-4, at 2.) Foreclosure proceedings began in December of 2006. (R. 51-5.) On February 21, 2007, Sandra was forced to leave her home due to poverty and illness. (R. 59-1, at 3.) Sandra left behind almost all of her personal belongings, including a number of cats. (R. 59-1, at 1.) Sandra's daughter, Kim Farinacci, has not lived in the home since June of 2006, but would return to the home to care for the cats. (R. 51-2; 59-1, at 1.)

In April of 2007, Rayfield James, Jr., an employee of James Secure, Inc., contacted the City Service Director, Tim McLaughlin, and asked him to remove the cats from the Farinacci home. (R. 59-1. at 7.) James Secure was hired by Fidelity National Field Services, Inc. ("Fidelity") to perform property preservation services. (Doc. 51-6.) Fidelity, in turn, was under a contract with Select Portfolio Servicing, Inc. ("SPS"), who was the servicing agent for the Bank of New York ("Bank"), who was the mortgage holder on the Farinacci home. The mortgage provides:

> Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property . . . If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the property to make repairs.

(Doc. 51-4, at 11.)

-2-

McLaughlin notified John Becony, the City Foreman, about the situation at the Farinacci home. (R. 38, at 4.) Becony subsequently informed Brad Buntura, the City Animal Warden. (Id.) Becony and Mike Kristof, the current Animal Warden, went to the Farinacci home to assess the situation. It is undisputed that no one from the City contacted the Farinaccis or the Bank to verify James' authority. (R. 59-1, at 9.) It is also undisputed that the Farinaccis never directly gave permission to the City to enter the home. (R. 59-1, at 2, 4.)

On April 5, 2007, Buntura and John Berdysz, a service department employee, entered the Farinacci home and placed cat traps inside the house. (R. 59-1, at 15-16, 60-61.) Later that same day, Kim Farinacci went into the house, freed the cats caught in the traps, and removed the traps from the house. (R. 59-1, at 4.) On April 6, 2007, Buntura returned to the house to check the traps, but discovered that they were missing. (Id. at 20, 26.) Buntura reported the missing traps to the police, who filed a theft incident report. (R. 59-1, at 25-26.)

On the same day, William Wervey wrote a letter to the Cuyahoga County Common Pleas Court which stated that the Farinacci home was vacant and abandoned:

> As the Building Commissioner of the City of Garfield Heights, I am familiar with the property located at 10520 Mountview . . . It is my opinion that this property is vacant and abandoned and is having a negative impact on the surrounding neighborhood.

(R. 59-1, at 41.) The Farinaccis claim that this letter circumvented the City's ordinance which requires the Building Department to post a notice of vacancy and give the property owner thirty days to respond. (See R. 59-2.)

The Farinaccis brought a section 1983 claim against the City and Wervey for a violation of the right to procedural due process; a section 1983 claim against the City, Becony, Buntura, Kristof,

McLaughlin, and Berdysz for a violation of the right to be free from unreasonable searches and seizures under the Fourth Amendment; and claims against all defendants for trespass, invasion of privacy, intentional infliction of emotional distress under Ohio law. The City and the individual defendants filed a motion for summary judgment on all claims, which the district court granted in its entirety. This appeal followed.

## DISCUSSION

### I.     Standard of Review

"We review a district court's grant of summary judgment *de novo*." *Alspaugh v. McConnell*, 643 F.3d 162, 168 (6th Cir. 2011). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).

### II.    Qualified immunity

The district court determined that the individual City employees were entitled to qualified immunity from the Farinaccis' claims brought pursuant to 42 U.S.C. § 1983. "A defendant is entitled to qualified immunity on summary judgment unless the evidence, viewed in the light most favorable to the plaintiff, 'would permit a reasonable juror to find that (1) the defendant violated a constitutional right; and (2) the right was clearly established.'" *Coble v. City of White House, Tenn*., 634 F.3d 865, 870 (6th Cir. 2011) (quoting *Aldini v. Johnson*, 609 F.3d 858, 863 (6th Cir. 2010)). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The district court concluded that under the first prong of the analysis, no Fourth Amendment violation occurred because the City employees had third-party consent to enter the Farinacci home. *Farinacci v. City of Garfield Heights*, 2010 WL 1268068, *11 (N.D. Ohio Mar. 30, 2010). The district court also concluded that no procedural due process violation occurred based on Wervey's failure to follow the City's ordinance. *Id.* at *8. Because the district court determined that there were no constitutional violations, it did not address whether the constitutional rights at issue were "clearly established." *Id.* at *8, 11.

### A. Fourth Amendment

Under the Fourth Amendment, "[a]n officer with consent needs neither a warrant nor probable cause to conduct a constitutional search." *United States v. Jenkins*, 92 F.3d 430, 436 (6th Cir. 1996) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). Valid consent may be provided by "a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *U.S. v. McCauley*, 548 F.3d 440, 446 (6th Cir. 2008) (quoting *United States v. Matlock*, 415 U.S. 164, 171 (1974)).

As the district court properly explained, the issue in this case is "whether James Secure, Inc. had authorization to give third-party consent and did properly give such consent to the individual Defendants." 2010 WL 1268068, at *9. The district court noted that:

> On this point, there is no dispute that Plaintiffs had no contract with either property preservation company—Fidelity National Field Services, Inc. or James Secure, Inc. The only contractual relationship was through Sandra Farinacci's mortgage with the bank and with SPS as the bank's servicing agent. Plaintiffs do not dispute the validity of the property preservation provisions in the mortgage, nor disagree that those provisions authorize the bank and SPS to enter the premises and do "whatever is necessary to protect the value of the property" under the circumstances identified.

*Id.* Instead, the Farinaccis argued that while the Bank or SPS could enter the property and authorize its agents to do so, no one else, including Fidelity or James Secure, had the authority to give third-party consent for entry. *Id.* However, the district court rejected this argument and found that the Bank and SPS delegated their authority to Fidelity and James Secure for the purpose of carrying out their property preservation duties. *Id.* at 11. Accordingly, the district court concluded that James Secure "had common authority over the house and a sufficient relationship to the premises" to give valid third-party consent to the City to enter the house. *Id.*

On appeal, the Farinaccis argue that even if James Secure, through the Bank, had certain rights under property or contract law, these rights must be distinguished from the authority to give consent to government officials to enter the premises owned or occupied by another.[1]

The Farinaccis are correct that common authority is "not to be implied from the mere property interest a third party has in the property." *Matlock*, 415 U.S. at 172 n.7. As the Supreme Court has explained: "The authority which justifies the third-party consent does not rest upon the law of property with its attendant historical and legal refinements." *Id.* Instead, common authority has been found to exist where there is "mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *Id.*

---

[1]There is some dispute between the parties as to whether the Farinaccis made this specific argument before the district court. However, we note that regardless of how the argument was articulated, the district court relied on the same cases identified by the Farinaccis in support of their argument.

In refining this principle, the Supreme Court has explained that "[t]he constant element in assessing Fourth Amendment reasonableness in the consent cases . . . is the great significance given to widely shared social expectations, which are naturally enough influenced by the law of property, but not controlled by its rules." *Georgia v. Randolph*, 547 U.S. 103, 111 (2006). To illustrate, the Supreme Court explained that:

> A person on the scene who identifies himself, say, as a landlord or a hotel manager calls up no customary understanding of authority to admit guests without the consent of the current occupant. *See Chapman v. United States*, [365 U.S. 610 (1961)] (landlord); *Stoner v. California*, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964) (hotel manager). A tenant in the ordinary course does not take rented premises subject to any formal or informal agreement that the landlord may let visitors into the dwelling, *Chapman*, *supra*, at 617, 81 S.Ct. 776, and a hotel guest customarily has no reason to expect the manager to allow anyone but his own employees into his room, *see Stoner*, *supra*, at 489, 84 S.Ct. 889; *see also United States v. Jeffers*, 342 U.S. 48, 51, 72 S.Ct. 93, 96 L.Ed. 59 (1951) (hotel staff had access to room for purposes of cleaning and maintenance, but no authority to admit police).

*Id.* at 112. The Supreme Court summarized: "In these circumstances, neither state-law property rights, nor common contractual arrangements, nor any other source points to a common understanding of authority to admit third parties generally without the consent of a person occupying the premises." *Id.*

In contrast, James had authority to admit third parties based on the mortgage document itself, which provided in broad terms that the Bank, as the Lender "may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property." The mortgage even specifies that the Bank's actions in this regard may include "entering on the property to make repairs." As the district court recognized: "When Sandra Farinacci signed her mortgage, which included the property preservation provisions, she expressly assumed the risk that, if it became

necessary to preserve the property, the bank might permit its agents and others to enter the house to effectuate that purpose." 2010 WL 1268068, at *10. Therefore, the district court did not err in concluding that James had common authority over the Farinacci home and a sufficient relationship to the premises to give third-party consent to the City employees to enter the house.

## B. Procedural due process

The Farinaccis argue that in finding that there was no procedural due process violation, the district court incorrectly characterized Wervey's letter as merely stating his opinion. The Farinaccis also argue that the district court should have found a causal connection between Wervey's letter and the warrantless entry into the Farinacci home.

The district court concluded that Wervey was not acting pursuant to Chapter 1371 of the Building Code, which is the City ordinance identified by the Farinaccis. The district court explained:

> Wervey sent a letter to the Common Pleas Court which was adjudicating Sandra Farinacci's property foreclosure, advising the Court that he believed the Mountview property was vacant and asking that the foreclosure proceedings relating to the property be expedited. Plaintiffs do not dispute that this letter was written in response to a request from the Common Pleas Court, asking municipalities to identify vacant properties in their environs so that the foreclosure proceedings as to those properties might be "fast-tracked" (Doc. 62–1 at 5). Plaintiffs also do not dispute that Wervey's letter followed the form suggested by the Common Pleas Court, which asked for an opinion as to the vacant status of properties in foreclosure, not for a formal or official declaration thereof. Finally, Plaintiffs do not dispute and the record is clear that, upon receipt of letters like the Wervey letter, the Common Pleas Court employed a procedure by which it notified the property owners of the fact that their properties were being treated as vacant ones, and giving the property owners the opportunity to object to that designation (Doc. 62–1 at 5)—the very notice and opportunity Sandra Farinacci claims to have been entitled under Chapter 1371. There simply is no support in the record, accordingly, for Sandra Farinacci's assertion that Wervey's letter constituted a legally binding declaration of her rights.

2010 WL 1268068, at *8. The district court also found that there was no causal connection between Wervey's letter and the claimed constitutional deprivation because the City entered the property before the letter was even sent. *Id.* Moreover, as the district court noted, the City employees did not rely on the letter for entry into the Farinacci home, but instead were acting at the request of James. *Id.* We find no error in this logic, and conclude that there was no procedural due process violation based upon Wervey's letter.

## C. *Monell* claims against the City

The district court found that the City was entitled to summary judgment on the Farinaccis' claims under *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978) because there were no constitutional violations. We have previously held that the absence of a constitutional violation by the individual defendants compels the grant of summary judgment with respect to a plaintiff's *Monell* claim based on the same conduct. *Meals v. City of Memphis, Tenn.*, 493 F.3d 720, 731 (6th Cir. 2007) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)). Therefore, the district court did not err in granting summary judgment on the claims against the City.

## D. Statutory immunity

The district court concluded that the City employees were entitled to statutory immunity from the Farinaccis' state law claims. Pursuant to Ohio Revised Code § 2744.03(A)(6), employees of a political subdivision are entitled to immunity unless the employee's actions "were with malicious purpose, in bad faith, or in a wanton or reckless manner." The district court found that the individual City employees did not act recklessly and the state law tort claims lacked merit regardless of statutory immunity.

On appeal, the Farinaccis argue that the question of whether the individual employees' conduct was reckless is a jury question. The district court recognized that the issue of recklessness is generally a jury question. 2010 WL 1268068, at *12. However, the district court also recognized that "[w]here the evidence in the record does not suggest a material factual issue on the question of reckless or willful or wanton misconduct, [it] is perfectly proper to determine the case by means of summary judgment." *Id.* (quoting *Garrison v. Bobbitt*, 731 N.E.2d 216, 225 (Ohio Ct. App. 1999)). After reviewing the record in great detail, the district court concluded that there was no evidence that the City employees acted recklessly.

The Farinaccis complain that the district court unfairly required them to show recklessness in the form of an unreasonable risk of *physical* harm. However, in interpreting Ohio Revised Code § 2744.03(A)(6), Ohio courts have held that an employee of a political subdivision is immune from liability unless there is reckless conduct which "creates an unreasonable risk of physical harm to another." *Moss v. Lorain Cty. Bd. of Mental Retardation*, 924 N.E.2d 401, 408 (Ohio Ct. App. 2009) (quoting *Thompson v. McNeill*, 559 N.E.2d 705 (Ohio 1990)); *see also Hunter v. Columbus*, 746 N.E.2d 246, 252 (Ohio Ct. App. 2000); *Thompson v. Smith*, 899 N.E.2d 1040, 1051 (Ohio Ct. App. 2008).

The Farinaccis also find fault with the district court's finding that the failure on the part of the City employees to verify James' authority was merely "sloppy," as opposed to reckless. The Farinaccis argue that this is an issue for the jury to decide. However, as the district court pointed out, James did in fact have proper third-party consent to enter the house, and any attempt to verify his

authority would have merely delayed his entry, not prevented it.  Therefore, the failure to confirm his authority cannot be deemed reckless.

Construing the evidence and all reasonable inferences therefrom in the light most favorable to the Farinaccis, we conclude that summary judgment was proper on their state law claims.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the decision of the district court.

**HELENE N. WHITE, Circuit Judge**, concurring.

I agree that plaintiffs made no showing that Wervey's letter had any connection to the allegedly wrongful entry into the home. Nor have plaintiffs shown that the City of Garfield Heights has a policy or custom of entering homes in violation of Fourth Amendment rights of homeowners.

I concur as to the remaining defendants on the narrow basis that the individual defendants are entitled to qualified immunity where they acted pursuant to the request of the authorized property-protection company after viewing the property and confirming that the property appeared vacant and in the process of being damaged by abandoned cats.

For the same reasons, the district court correctly determined that the defendants did not act recklessly.